UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>vs.<br>JEROME TOUPAL,<br>Defendant. | 4:26-CR-40026-KES<br><br>ORDER GRANTING MOTION TO DISMISS INDICTMENT |

Defendant, Jerome Toupal, moves to dismiss the indictment filed against him for failure to register as a sex offender, in violation of 18 U.S.C. § 2250(a). Docket 24. The United States opposes the motion. Docket 36. Toupal replied. Docket 37. For the reasons stated below, the court grants Toupal's motion to dismiss the indictment.

**BACKGROUND**

When considering a motion to dismiss an indictment, the court takes the allegations in the indictment as true for purposes of considering the motion. *See Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337, 343 n.16 (1952). The following facts are either alleged in the indictment or submitted by the parties in their briefings.

The indictment alleges that between November 20, 2025, and March 5, 2026, Toupal was a convicted sex offender who was "required to register under the Sex Offender Registration and Notification Act (SORNA), and[,] having

traveled in interstate commerce, knowingly failed to register and update [his] registration[.]" Docket 1.

Toupal's underlying offense is a 1993 South Dakota conviction for second-degree rape, in violation of SDCL § 22-22-1(2).[1] Docket 25 at 2; Docket 36 at 2. Toupal was sentenced to 25 years in the State Penitentiary, and his sentence was discharged on August 9, 2007. Docket 25 at 2; Docket 36 at 2–3. The government alleges that, at some point between November 20, 2025, and March 5, 2026, Toupal traveled from South Dakota to New Mexico, knowingly failed to update his registration as a sex offender, and was later arrested in the District of New Mexico. Docket 25 at 3.

Toupal argues that his 1993 South Dakota conviction places him in SORNA's tier I category, which requires maintaining an updated registration for 15 years.[2] Docket 25 at 4, 6; *see* 34 U.S.C. § 20911(1)–(4) (defining sex offender tiers); 34 U.S.C. § 20915(a)(1) (defining tier I sex offender registration period). Because his sentence was discharged over 19 years ago on August 9, 2007, Toupal's 15-year registration requirement would have lapsed in this scenario.[3]

---

[1] At the time of Toupal's conviction, second-degree rape was defined by statute as "an act of sexual penetration accomplished with any person . . . (2) Through the use of force, coercion or threats of immediate and great bodily harm against the victim . . . accompanied by apparent power of execution[.]" 1991 S.D. Sess. Laws ch. 24 § 8 at 58. This language is unchanged today. *See* SDCL § 22-22-1.

[2] "The term 'tier I sex offender' means a sex offender other than a tier II or tier III sex offender." 34 U.S.C. § 20911(2).

[3] A more accurate date for this analysis is March 16, 2004, the date that Toupal was released from custody to parole. Docket 25 at 2, 14. "The [SORNA] registration period begins to run when the sex offender is released from prison on the conviction giving rise to the registration requirement." *United States v. Red Tomahawk*, 2018 WL 772081, at *3 (D.N.D. Feb. 7, 2018); *see also* 34 U.S.C. § 20915(a) ("A sex offender shall keep the registration current for the full

Docket 24 at 1; Docket 25 at 2, 14; Docket 36 at 3; Docket 37 at 4–5. The government disagrees and claims that Toupal's 1993 conviction places him in SORNA's tier III category, which requires maintaining an updated registration for life.[4] Docket 25 at 6–7; Docket 36 at 1; *see* 34 U.S.C. § 20911(4); 34 U.S.C. § 20915(a)(3) (defining tier III sex offender registration period). Both parties agree that SORNA's tier II category does not apply to Toupal. *See* Docket 25 at 6 (defining a tier II offender as one who commits an enumerated felony offense against a minor); Docket 36 (no discussion of a tier II offense).

**LEGAL STANDARD**

A criminal indictment must include "a plain, concise, and definite written statement of the essential facts constituting the offense charged[.]" Fed. R. Crim. P. 7(c)(1). A criminal defendant may move to dismiss an indictment for "failure to state an offense[.]" Fed. R. Crim. P. 12(b)(3)(B)(v). "When ruling on a motion to dismiss, a court must accept all factual allegations in the indictment as true." *United States v. Marrowbone*, 3:14-CR-30071, 2014 WL 6694781, at *1 (D.S.D. Nov. 26, 2014).

"Ordinarily, a court does not look beyond the four corners of the indictment when judging its sufficiency." *United States v. Church*, 461 F. Supp.

---

registration period (excluding any time the sex offender is in custody or civilly committed)[.]").

[4] "The term 'tier III sex offender' means a sex offender whose offense is punishable by imprisonment for more than 1 year and--

> (A) is comparable to or more severe than the following offenses, or an attempt or conspiracy to commit such an offense:
>
> > (i) aggravated sexual abuse or sexual abuse (as described in sections 2241 and 2242 of Title 18)[.]"

34 U.S.C. § 20911(4).

3d 875, 880 (S.D. Iowa 2020); *see also Marrowbone*, 2014 WL 6694781, at *2 (" 'An indictment should be tested solely on the basis of the allegations made on its face,' and no evidence outside the four corners of the indictment should be considered[.]" (internal citations omitted)). But a growing number of courts have relaxed this rule when considering SORNA-based indictments when "the material facts are undisputed and the challenge presents a pure question of law." *Church*, 461 F. Supp. 3d at 881 (listing several cases using extrinsic evidence when evaluating the sufficiency of SORNA-based indictments). That is the case here, and both parties base their briefs on materials not found within the indictment. *See* Docket 25 at 1–3, 5; Docket 36 at 2–3; Docket 37 at 2–3.

"[T]o be valid, an indictment must allege that the defendant performed acts which, if proven, constitute the violation of law for which he is charged." *United States v. Polychron*, 841 F.2d 833, 834 (8th Cir. 1988). "An indictment is legally sufficient on its face if it contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to a subsequent prosecution." *United States v. Steffen*, 687 F.3d 1104, 1109 (8th Cir. 2012) (quoting *United States v. Fleming*, 8 F.3d 1264, 1265 (8th Cir. 1993)). "If the acts alleged in the indictment do not constitute a violation of law, the indictment is properly dismissed." *Polychron*, 841 F.2d at 834; *see also Marrowbone*, 2014 WL 6694781, at *1. Generally, an indictment is insufficient only if it is "so defective[,]" such as omitting an essential element of the offense, "that no reasonable construction of it properly

charges the offense for which the defendant is being tried." *Marrowbone*, 2014 WL 6694781, at *1; *see also United States v. Hance*, 501 F.3d 900, 906 (8th Cir. 2007); *United States v. Sewell*, 513 F.3d 820, 821 (8th Cir. 2008).

Here, it is proper for the court to rule on Toupal's motion to dismiss. "[The defendant] may raise his challenge to the indictment at this stage because it presents a pure question of law, based on undisputed facts, and thus it can be resolved without a trial on the merits." *Church*, 461 F. Supp. 3d at 881. "[A] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." *United States v. Grant*, 2018 WL 4516008, at *1 (N.D. Ga. July 4, 2018), *report and recommendation adopted*, 2018 WL 4140870 (N.D. Ga. Aug. 30, 2018) (quoting Fed. R. Crim. P. 12(b)(2)); *accord Marrowbone*, 2014 WL 6694781, at *2. Because a person's SORNA tier classification is a question of law consisting of both statutory interpretation and the legal classification of a prior conviction, the court has authority to decide Toupal's motion. *See United States v. Burchell*, 4:21-CR-40025, 2021 WL 3726899, at *1 (D.S.D. Aug. 23, 2021) (concluding that because SORNA classifications "raise[] a legal question, . . . it is appropriate for the Court to resolve [the motion to dismiss the indictment] in advance of trial.").

## DISCUSSION

### I. SORNA tiers and the categorical approach

"SORNA classifies sex offenders into three tiers with each category corresponding to specific, enumerated crimes or to offenses incorporated from

other federal sexual abuse laws." *United States v. Mulverhill*, 833 F.3d 925, 928 (8th Cir. 2016) (quoting *United States v. Morales*, 801 F.3d 1, 3 (1st Cir. 2015)). SORNA requires a convicted offender to register and to "keep the registration current" in "each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student." 34 U.S.C. § 20913(a). The two requirements are connected because "[t]he length of a sex offender's duty to register depends on his or her tier classification." *Church*, 461 F. Supp. 3d at 881.

Tier III offenders have been convicted of a felony that is

> (A) "comparable to or more severe than" (i) aggravated sexual abuse or sexual abuse as defined in 18 U.S.C. §§ 2241 and 2242, respectively, or (ii) abusive sexual contact as defined in 18 U.S.C. § 2244 against a minor under the age of thirteen; (B) involves kidnapping a minor; or (C) occurs when the offender is already a tier II offender.

*Id.* at 882 (quoting 34 U.S.C. § 20911(4)). Tier III offenders are considered "[t]he most egregious" and incur a lifetime registration requirement. *Mulverhill*, 833 F.3d at 928 (alterations in original); 34 U.S.C. § 20915(a)(3).

Offenders in tier II have been convicted of a felony "against a minor" as described in the corresponding federal statutes or have otherwise committed a felony while being a tier I offender. 34 U.S.C. § 20911(3). Defendants in tier II must register for 25 years. 34 U.S.C. § 20915(a)(2).

Tier I is the "least severe" category. *United States v. Coulson*, 86 F.4th 1189, 1191 (8th Cir. 2023). It is a catchall category and includes sex offenders "who do not qualify as tier II or tier III offenders." *Church*, 461 F. Supp. 3d at

882; 34 U.S.C. § 20911(2). The registration period for a tier I sex offender is 15 years. 34 U.S.C. § 20915(a)(1).

The language of § 20911 requires that a SORNA defendant's underlying offense be "comparable to or more severe than" a listed federal offense. *Coulson*, 86 F.4th at 1191; 34 U.S.C. § 20911(3)–(4). Courts have applied different approaches "when comparing prior convictions with the generic or federal offenses listed in . . . SORNA"—the categorical approach, the modified categorical approach, and the circumstance-specific approach. *Church*, 461 F. Supp. 3d at 882, 885. The Eighth Circuit has held that "the categorical approach applies to SORNA's tier analysis." *Coulson*, 86 F.4th at 1191. "[T]extual support points almost exclusively toward the categorical approach [to SORNA analysis]." *Id.* at 1194.

The categorical approach focuses on the elements of the underlying state offense to determine whether it is "comparable to" the federal analogs listed for tier II or tier III offenses. *See Mathis v. United States*, 579 U.S. 500, 503 (2016) ("To determine whether a past [state] conviction is for one of those [federal] offenses, courts compare the elements of the crime of conviction with the elements of the 'generic' version of the listed offense[.]"). So "[t]his approach disregards the facts, or 'means,' of a prior conviction and focuses on the elements of the crimes at issue." *Church*, 461 F. Supp. 3d at 882. A defendant is placed in the corresponding SORNA tier only after the court finds that the elements of the underlying state offense are comparable to those of an enumerated federal offense. "Comparable" means "the elements of the prior

[state] offense are the same as, or narrower than, the elements of the listed [federal] offense[.]" *Id.*

Here, the parties disagree over the proper analytical approach. Toupal correctly argues that the categorical approach applies under *Coulson*. Docket 25 at 7–8. The government disagrees and claims the court should apply the modified categorical approach because SDCL § 22-22-1(2) is "divisible." Docket 36 at 3–6. Notably, this outcome would allow the government to describe facts of Toupal's plea that the court cannot consider under the elements-only categorical approach.[5] *Id.* at 2, 6–7. Like *Coulson*, the government argues that "the term 'comparable' . . . provide[s] an expansive degree of flexibility" and urges the court to use the modified categorical approach. *Coulson*, 86 F.4th at 1192; Docket 36 at 3–4.

The holding in *Coulson* clearly forecloses the modified categorical approach. *Coulson*, 86 F.4th at 1191. Thus, the court applies the categorical approach to the SORNA tier analysis below.[6]

---

[5] Courts apply the modified approach if the underlying state statute is "divisible," that is, if the statute's language "list[s] elements in the alternative, and thereby define[s] multiple crimes" and penalties. *Mathis*, 579 U.S. at 505. With the modified approach, a court "looks to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of." *Id.* at 505–06. Unlike the categorical approach, the modified approach allows a court to consider the facts underlying the offense of conviction. *Church*, 461 F. Supp. 3d at 885.

[6] Because the court applies the categorical approach, the government's emphasis on whether SDCL § 22-22-1(2) is divisible or indivisible, along with the distinction between elements and means, is unnecessary. *See* Docket 36 at 5–6, 10–12.

## II. SDCL § 22-22-1(2) sweeps more broadly than and is not comparable to either 18 U.S.C. §§ 2241 or 2242

The categorical approach requires the court to "focus solely on whether the elements of the crime of conviction sufficiently match the elements of" the relevant federal statute, and the court must "ignor[e] the particular facts of the case." *Mathis*, 579 U.S. at 504. "[T]he categorical approach does not permit a court to consider a defendant's actual underlying conduct." [7] *Coulson*, 86 F.4th at 1194. Here, the court must compare the two statutory elements of Toupal's conviction under SDCL § 22-22-1(2) to the elements of the federal crimes enumerated in 34 U.S.C. § 20911(4)(A)(i)—aggravated sexual abuse and sexual abuse as described in 18 U.S.C. §§ 2241 and 2242, respectively—as they read at the time of his conviction.[8] The elements of the underlying state conviction must be "comparable to," or narrower than, those of the corresponding federal offense. *See Church*, 461 F. Supp. 3d at 883 (surveying the literature on "comparable" elements).

### A. "Coercion" in SDCL § 22-22-1(2)

The court restates the relevant language from each statute.

> 22-22-1. Rape is an act of sexual penetration accomplished with any person under any of the following circumstances . . . (2) Through the use of force, coercion or threats of immediate and great bodily harm against the victim or other persons within the victim's presence, accompanied by apparent power of execution. A violation of subdivision (2), (3) or (4) of this section is rape in the second degree, which is a Class 2 felony.

---

[7] This is true "no matter how aggravating" the facts of a defendant's underlying state conviction may be. *Church*, 461 F. Supp. 3d at 879 n.1.

[8] The other tier III federal offenses listed in 34 U.S.C. § 20911(4) do not apply to Toupal's situation.

1991 S.D. Sess. Laws ch 24 § 8 at 58 (current version at SDCL § 22-22-1).

> § 2241. Aggravated sexual abuse
> (a) By force or threat. Whoever . . . knowingly causes another person to engage in a sexual act-
> (1) by using force against that other person; or
> (2) by threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnapping; or attempts to do so, shall be fined under this title, imprisoned for any term of years or life, or both.

Sexual Abuse Act of 1986, Pub. L. No. 99-654, § 2, 100 Stat. 3660, 3660 (current version at 18 U.S.C. § 2241).

> § 2242. Sexual abuse
> Whoever . . . knowingly-
> (1) causes another person to engage in a sexual act by threatening or placing that other person in fear (other than by threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnapping); . . . or attempts to do so, shall be fined under this title, imprisoned not more than 20 years, or both.

Sexual Abuse Act of 1986, Pub. L. No. 99-654, § 2, 100 Stat. 3660, 3661 (current version at 18 U.S.C. § 2242).

The parties' first disagreement arises from the inclusion of the word "coercion" in subdivision (2) of SDCL § 22-22-1. "Coercion" does not appear in either §§ 2241 or 2242 as codified at the time of Toupal's conviction.[9] Toupal

[9] Toupal explains that new language was added to § 2242 in 2022 that included "(3) [or] engages in a sexual act with another person without that other person's consent, to include doing so through coercion[.]" Docket 25 at 10; 18 U.S.C. § 2242(3). The government does not reference or make any argument based on the current federal language. *See also United States v. Kebodeaux*, 570 U.S. 387, 391–92 (2013) (focusing the SORNA analysis only on the details of defendant's conviction at the time of the offense).

concedes that while violations of SDCL § 22-22-1(2) can be accomplished through force or threats, the South Dakota statute sweeps more broadly than either §§ 2241 or 2242 because it can also be violated by "sexual penetration accomplished . . . through use of coercion." Docket 25 at 9. Under Toupal's argument, the state and federal statutes would not be a categorical match. The government disagrees that the term "coercion" encompasses a broader range of conduct than the federal statutes. Docket 36 at 5. By treating each term in subdivision (2) as an independent element (force or coercion or threats of immediate and great bodily harm), the government argues the language in the statutes overlap and the element under which Toupal was convicted fits within either §§ 2241 or 2242. *Id.* at 7, 12. But the government can only draw this conclusion by referring to specific facts in Toupal's underlying conviction, which the court cannot do under the categorical approach. *See id.* at 2, 6.

The language in the 1993 South Dakota statute, which includes "coercion," sweeps more broadly and encompasses more activity than the federal statutes. The statutory canon against surplusage requires that "[w]ords must be taken so as to have effect[.]" Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 441 (2012). Under SDCL § 22-22-1(2), the Legislature articulated three distinct means of committing second-degree rape: by the use of force, coercion, or threats of immediate and great bodily harm against the victim. The court gives deference to the words used by the South Dakota legislature and "avoid[s] a reading that renders some words altogether redundant." Scalia & Garner, *supra*, at 176. Thus, even though the

words "coercion," "force," "threat," or "harm" are not defined in title 22 of South Dakota's code, the Legislature's explicit use of the word coercion implies it has a separate meaning from force and threats. *See* SDCL § 22-1-2 (defining words used in title 22).

The South Dakota Supreme Court discussed the concept of coercion in *State v. Klaudt*, 772 N.W.2d 117 (S.D. 2009). The issue in *Klaudt* centered on the adequacy of jury instructions, where some instructions used the terms "force" and "coercion." *Id.* at 124–25. The trial judge instructed that "[a]s used in these instructions, the terms 'force' and 'coercion' are synonymous." *Id.* at 127. The South Dakota Supreme Court disagreed, noting in a footnote that "we do not agree that the terms 'force' and 'coercion' are synonymous." *Id.* at 127 n.7. Even though the South Dakota Supreme Court did not provide explicit definitions, the Court's extensive discussion of both psychological and monetary coercion implies that the act of coercion is more expansive than force, threats, or placing another person in fear as §§ 2241 and 2242 require. *See id.* at 127.

Lastly, Congress expanded the definition of federal sexual abuse to include "knowingly . . . engag[ing] in a sexual act with another person without that other person's consent, *to include doing so through coercion*[.]" *See* Consolidated Appropriations Act, 2022, Pub. L. No. 117–103, § 1202, 136 Stat. 49, 924 (amending 18 U.S.C. § 2242) (emphasis added). This amendment "filled a gap in the United States Code by making it a crime to engage in nonconsensual sexual acts without the need to prove" overt physical force,

threat of death, or severe physical incapacitation. *VAWA 2022 Federal Criminal Sexual Misconduct Statutes*, U.S. Dep't of Just. Off. on Violence Against Women, https://www.justice.gov/ovw/vawa-2022-federal-criminal-sexual-misconduct-statutes (last updated May 19, 2024). This further supports the court's conclusion that "coercion" sweeps more broadly and encompasses more activity than the acts of force or threats alone.

**B. The phrase "sexual penetration" in SDCL § 22-22-1**

The parties' second disagreement arises from the inclusion of the phrase "sexual penetration" in SDCL § 22-22-1. Sections 2241 and 2242 require a "sexual act." The relevant portions of each definition are:

> 22-22-2. Sexual penetration means an act, however slight, of sexual intercourse, cunnilingus, fellatio, anal intercourse, or any intrusion, however slight, of any part of the body or of any object into the genital and anal openings of another person's body.

1993 S.D. Sess. Laws ch 178 § 4 at 231 (current version at SDCL § 22-22-2).

> § 2245. Definitions for chapter
> As used in this chapter . . .
> (2) the term "sexual act" means-
> (A) contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight;
> (B) contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus; or
> (C) the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person[.]

Sexual Abuse Act of 1986, Pub. L. No. 99-654, § 2, 100 Stat. 3660, 3662 (current version at 18 U.S.C. § 2246).

Toupal contends that while the South Dakota definition partly overlaps with the federal definition, it also diverges. Docket 25 at 13. Toupal highlights the specific intent requirement embedded within subsection (C) of the federal definition of sexual act ("with an intent to"). *Id.* Because similar language is absent in the corresponding South Dakota definition, Toupal claims second-degree rape in South Dakota can be committed without specific intent. *Id.* Under this argument, Toupal contends that the state statute sweeps more broadly than the federal definition and the statutes are not a categorical match. *Id.* at 14. The government disagrees and argues that the South Dakota definition is a list of alternative elements from which to choose instead of one coherent definition. Docket 36 at 10. The government claims that because South Dakota's definition of sexual penetration and the federal government's definition of sexual act both use the disjunctive "or" to separate their terms, the statutes are "divisible in that [they] provide[] multiple elements[.]" *Id.* at 10–12. Under the government's argument, as long as any one "element" of the South Dakota definition matches up with any other "element" of the federal definition, that is sufficient to satisfy the SORNA analysis. *Id.* at 10. As with its prior argument, the government is only able to reach the conclusion that Toupal's conviction satisfies both the state and federal statutory definitions by referring to the underlying facts of his state conviction. *See id.* at 11.

South Dakota's phrase "sexual penetration" sweeps more broadly and encompasses more activity than the federal phrase "sexual act." As both parties agree, there is no intent requirement in SDCL § 22-22-2's definition of sexual penetration. Notably, though, the South Dakota legislature did include a specific intent requirement in a nearby definition. SDCL § 22-22-7.1 defines sexual contact with a child under sixteen, and it states "[a]s used in this chapter, the term, sexual contact, means any touching, not amounting to rape . . . of the breasts of a female or the genitalia or anus of any person *with the intent to* arouse or gratify the sexual desire of either party." SDCL § 22-22-7.1 (emphasis added). "Statutes in pari materia are to be interpreted together[.]" Scalia & Garner, *supra*, at 252. "[A]mbiguities in one statute may be resolved by looking at another statute on the same subject[.]" *Id.* at 430. Given the physical closeness of these two statutory definitions on the same subject, the court concludes that the South Dakota legislature knows how to include an intent requirement in a statutory definition when it chooses to do so, but did not.

This conclusion is confirmed by the South Dakota Supreme Court's discussion in *People ex rel. J.H.*, 756 N.W.2d 549, 552 (S.D. 2008). There, the Court held that a "nonsexual" act can nonetheless rise to the level of second-degree rape. *Id.* at 549 (affirming that "an attempted rape may be committed even if the perpetrator had no sexual purpose"). In its statutory analysis of SDCL §§ 22-22-1(2) and 22-22-2, the Court concluded that "the element of sexual intent was deliberately omitted from the rape statute, for it was clearly

included in the sexual contact statute." *Id.* at 552. This led the South Dakota Supreme Court to conclude the South Dakota legislature intended that "certain types of 'sexual penetration' could be nonsexual, yet constitute a crime." *Id.* at 553.

Because subsection (C) of the federal definition of sexual act contains an intent requirement, and South Dakota's definition of sexual penetration does not, the court finds that South Dakota's second-degree rape statute sweeps more broadly and encompasses more activity than the federal statute. *See also Church*, 461 F. Supp. 3d at 888–93 (holding that Nebraska's first-degree sexual assault statute is not comparable to §§ 2241 or 2242 because the State's "without consent" provision sweeps more broadly); *accord United States v. Barcus*, 892 F.3d 228, 234 (6th Cir. 2018) ("Tennessee aggravated sexual battery does not require that the sexual contact be for arousal or gratification. The federal statute does. The state statute thus sweeps more broadly than the Tier III requirements.").

**III. Toupal's underlying state conviction under SDCL § 22-22-1(2) places him in SORNA tier I with a 15-year registration requirement**

South Dakota's second-degree rape statute is not comparable to or more severe than the federal crimes of sexual abuse or aggravated sexual abuse. Thus, Toupal does not qualify as a tier III sex offender under SORNA, and the tier II category is not applicable to Toupal's situation. Toupal, then, is a tier I sex offender, and his duty to register under SORNA lasted 15 years. 34 U.S.C. § 20915(a)(1). Because Toupal was released from custody to parole on March 16, 2004, his 15-year registration period ended in 2019. Docket 25 at 2, 14.

The indictment alleges Toupal's failure to register occurred between November 20, 2025, and March 5, 2026. Docket 1. Because Toupal is a tier I offender whose duty to register under SORNA had expired at the time of the events alleged in the indictment, the indictment does not allege a criminal offense and must be dismissed.

**CONCLUSION**

Thus, it is

ORDERED that Toupal's motion to dismiss the indictment (Docket 24) is granted.

Dated October 13, 2026.

BY THE COURT:

/s/ Karen E. Schreier
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE